UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA J. SANFORD,

      Plaintiff,

v.                                             Case No. 1:25-cv-96
                                            Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB (January 17, 2022) and SSI (January 20, 2022) alleging a disability onset date of March 1, 2020.  PageID.103.  Plaintiff identified 12 disabling conditions.[1]  Plaintiff completed the 12th grade and had past relevant work as an office manager and in accounts payable.  PageID.115.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 20, 2023.  PageID.103-117.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.     LEGAL STANDARD

---

[1] Plaintiff listed the following conditions: heart disease (9 stents); heart attacks (3); high risk stroke/heart attack; decreasing bone density; unstable angina; extreme blood loss over past 5 years; nightmares; anxiety attacks; chronic stress (related to blood transfusions); iron transfusions; past blockage to kidney; and, teeth deterioration related to long term blood loss. PageID.322.

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed

a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis*

*v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 1, 2020, and that she met the insured status requirements of the Social Security Act through June 30, 2025.   PageID.105.  At the second step, the ALJ found that plaintiff has severe impairments of: coronary artery disease, status post stenting; angina; osteoporosis; anxiety; insomnia; depression; degenerative disc disease; hyperlipidemia; hypertension; obesity; and, sleep apnea.  PageID.105.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.106.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for four hours out of eight; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally work around extreme cold, extreme heat, vibration, and have concentrated exposure to atmospheric conditions, as defined by the Selected Characteristics of Occupations; can never work around hazards, such as unprotected heights or unguarded moving machinery; can understand, remember, and carry out detailed instructions, and make detailed work-related decisions; can occasionally interact with coworkers and the general public [sic].

PageID.109-110. The ALJ also found that plaintiff is unable to perform any past relevant work.  PageID.115.

At the fifth step, the ALJ found that plaintiff could perform a significant number of light, unskilled jobs in the national economy.  PageID.115-116.  Specifically, the ALJ found that based on the vocational expert's (VE's) testimony, plaintiff could perform the requirements of the following jobs: nut and bolt assembler (200,000 jobs); ticket labeler (400,000 jobs); and garment sorter (100,000 jobs).  PageID.116.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2020 (the alleged onset date) through December 20, 2023 (the date of the decision).  PageID.116-117.

### III.    DISCUSSION

Plaintiff set out an issue which the Court construes as the statement of error[2]:

**The ALJ failed to include all supported limitations in the hypothetical question posed to the VE [vocational expert] that formed the basis of the RFC [residual functional capacity].**

Plaintiff contends that "[t]he RFC did not properly account for deficiencies in concentration, persistence, and pace."  Plaintiff's Brief (ECF No. 18, PageID.1445).  In turn, this led the ALJ to pose a deficient hypothetical question to the VE at Step Five.  Plaintiff adds that, "[w]hen one considers her anxiety attacks that arise within the context of a constant fear of dying from heart issues, it is not hard to see that concentration, persistence, and pace issues are substantially limiting and work preclusive" and that the ALJ did not remedy this situation with the RFC's restrictions.  *See id*. at PageID.1449.

The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb v.*

---

[2] The Court's directions for filing briefs (ECF No. 6) states in pertinent part,

> Plaintiff's initial brief . . .  must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue.

*Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545 and § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

At Step Three, in evaluating the severity of plaintiff's mental impairments and whether plaintiff met the "paragraph B" criteria of Listings 12.04 (Depressive, bipolar, and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), the ALJ stated in part,

> To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. . . .
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In his Function Report, the claimant endorsed problems with concentrating, following instructions, and completing tasks. However, the claimant also described engaging in several activities that require a fair degree of concentration, persistence, and pace. These included paying bills, driving a car, watching television, and cooking simple meals (Exhibit B4E). The claimant required redirection and her thoughts were scattered during her most recent consultative exam. However, she could perform serial seven's and calculate most basic math problems (Exhibits B1F, B18F).

PageID.108-109.

The ALJ also addressed the relationship between the paragraph B criteria and the RFC assessment:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental

functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

PageID.109.

In evaluating plaintiff's RFC, the ALJ recognized the limitations posed by plaintiff's impairments and limited her to light work. PageID.113. The ALJ found that,

> The claimant does have a significant cardiac history, including a total of 9 stent placements. However, she was noncompliant with treatment recommendations at times, including leaving the hospital against medical advice to take care of her house or go shopping with her daughter (Exhibits B2F/20; B5F/48). She also has not required ongoing treatment with her cardiologist since September 2021. At that time, her cardiologist noted she was doing fairly well and continued the claimant on her current medication (Exhibit B4F/5).

*Id.*

With respect to back pain, the ALJ found that:

> [T]he claimant had some tenderness on exam but just mild to moderate narrowing seen on imaging of the spine (Exhibits B10F/5; B19F/50-54). She has not required physical therapy, injections, pain management, or surgery to treat her back pain.

*Id.*

The ALJ found that plaintiff's sleep apnea and insomnia were treated conservatively with medication, and that while plaintiff complained of fatigue, "she appeared alert at examinations (Exhibits B8F/29; B9F/52; B15F/2)." *Id.*

> Finally, as for her anxiety and depression, the claimant has had minimal treatment with her primary care provider for her mental health, consisting of taking prescribed medication. She has not required any counseling, psychiatric services, or inpatient psychiatric care. The claimant also described activities she could perform that are generally consistent with the adopted residual functional capacity, such as living alone, driving short distances, grocery shopping, cooking simple meals, and paying bills (Exhibit B4E; Hearing testimony).

*Id.*

The ALJ noted that,

>       DDS psychological consultant Jerry Csokasy, PhD, opined that the claimant had mild limitations understanding, remembering, or applying information and adapting or managing herself. He found the claimant had moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace. In assessing the mental residual functional capacity, Dr. Csokasy opined that the claimant could perform detailed tasks that require some independent decision making and learned in 1 to 6 months, with occasional contact with others (Exhibits B6A-B7A). I am persuaded by this assessment as it is supported by explanation and consistent with the medical evidence, including the claimant's history of relatively conservative mental health treatment (Exhibit B8F; Hearing testimony).

PageID.114.

More recently, Dr. Strang assessed plaintiff's "stream of mental activity" as "[t]houghts were relatively scattered and she required redirection quite frequently" and "[s]peech as 100% understandable." PageID.1162. Ultimately, Dr. Strang concluded that plaintiff had,

>       Mild limitations with her ability to retrieve information.  Mild limitation with ability to focus and concentrate on a task.  Moderate limitation with social interaction.  Claimant may develop panic episodes if she is in environments that are too crowded or busy.  No limitation with self-management.

PageID.1163.  The ALJ addressed Dr. Strang's opinion as follows:

>       In May 2023, consultative examiner Tim Strang, PhD, opined that the claimant had mild limitations in the ability to retain and retrieve information, and focus and concentrate on a task.  He found she had a moderate limitation with social interaction. He found she had no limitation with self-management (Exhibit B18F). I am persuaded by this opinion. Dr. Strang's opinion is supported by his own evaluation and generally consistent with the claimant's conservative mental health treatment (Exhibits B8F, B18F). However, I do find the claimant somewhat more limited in her ability to concentrate, persist, or maintain pace. This is supported by the claimant's reported difficulty with concentrating and her presentation at the consultative exam, during which she exhibited scattered thoughts and required redirection (Exhibits B4E, B18F).

*Id*. (emphasis added).

As discussed, plaintiff's claim  involves the ALJ's failure to incoporate the "concentration, persistence and pace" language in "Paragraph B" in the RFC determination.  "[I]t is well established that the Paragraph B criteria used in determining whether a claimant meets or

equals a listed impairment 'are not an RFC assessment.'"  *Palmer v. Commissioner of Social Security*, No. 1:16-cv-660, 2017 WL 2129689 at *3 (W.D. Mich. May 17, 2017) (quoting SSR 96-8p, 1996 WL 374184 at *4 (SSA July 2, 1996)).  As the court observed in *Rauch v. Commissioner of Social Security*, No. 1:18-cv-408, 2019 WL 2996511 (June 20, 2019), *R&R adopted*, 2019 WL 2994506 (W.D. Mich. July 9, 2019), a Paragraph B finding with respect to concentration, persistence and pace [CPP] does not translate into an RFC assessment:

> The reference to CPP in "paragraph B" is written in the disjunctive, *i.e.*, to meet the listing by showing CPP, the claimant must have an extreme or marked limitation in the ability to "concentrate, persist or maintain pace." *See* Listings 12.04.B.3. and 12.06B.3. "Because three different functions [in paragraph 'B'] are listed in the disjunctive, however, a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions . . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing." *Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. April 29, 2014).

*Rauch*, 2019 WL 2996511 at *3

Here, the ALJ addressed these Paragraph B findings while evaluating plaintiff's RFC at Step Four RFC.  As discussed, the ALJ appeared to make inconsistent findings with respect to plaintiff's ability to meet the mental demands of work, *i.e.*, while the ALJ observed that plaintiff had scattered thoughts and required redirection during Dr. Strang's examination,  the ALJ found that plaintiff could follow detailed work instructions and make detailed work-related decisions while on the job.  It is difficult to reconcile how a person can follow detailed work instructions when they need constant "redirection" or how a person with "scattered thoughts" can make detailed work-related decisions.

However, based on the record as a whole, the Court concludes that this inconsistency with respect to plaintiff's ability to concentrate is not a sufficient basis to reverse and remand the ALJ's decision.  At the administrative hearing, the VE concluded that a person

with plaintiff's RFC could perform other work in the national economy such as nut and bolt assembler, ticket labeler, and garment sorter.  PageID.144-145.  In addition, the VE testified that if this person was limited to simple and routine work (rather than the ability to follow detailed instructions or make detailed work-related decisions), the person would still be able to perform the identified jobs:

> Q. [Attorney]  . . .  If we added, if we made some modifications to the Judge's hypothetical where they could only do jobs that involved simple and routine work processes with no interaction with the general public and only superficial interaction with the coworkers, would that change your answer?
>
> A. [VE]        Those positions would still remain and remain in the same numbers that I gave for both hypotheticals.

PageID.146.

Limiting plaintiff to simple and routine work processes, to no interaction with the general public, and with only superficial interaction with coworkers, would address plaintiff's moderate limitations in concentration, persistence and pace.[3]  Assuming that plaintiff had these limitations, the VE's testimony established that plaintiff could still perform the identified jobs. Based on this evidence, a reversal and remand of the ALJ's decision would not lead to a different result. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result*." Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507 (6th

---

[3] *See Smith- Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 436-37 (6th Cir. 2014) (limiting a claimant to "simple, routine, and repetitive tasks" adequately conveyed the claimant's moderately-limited ability "to maintain attention and concentration for extended periods," where claimant's doctor "did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"). *See also, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner).

Cir. 2006), quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Accordingly, plaintiff's claim of error should be denied.

### IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: February 20, 2026                    /s/ Ray Kent
                                            Ray Kent
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).